IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| XAVIER A. COLLINS,<br><br>　　　　Petitioner,<br><br>　vs.<br><br>KELLY HARRINGTON, Warden,* *et al.*,<br><br>　　　　Respondents. | Case No. 2:08-cv-00504 JKS<br><br>ORDER |

　　　　Petitioner, a state prisoner proceeding pro se, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. He challenges a 2004 judgment of conviction and sentence entered in the Superior Court of California, Sacramento County, on one count of robbery and enhancements for the personal discharge of a firearm and prior convictions that qualified as strikes under California's Three Strikes Law. Petitioner alleges relief is warranted on the following grounds: (1) erroneous jury instruction concerning third-party threats against the victim; (2) failure to give *Miranda* warning before questioning; (3) misjoinder of firearm enhancement; (4) ineffective assistance of counsel; and (5) prosecutorial misconduct. Docket No. 1. Respondent asserts that Petitioner's last ground is unexhausted and that all the grounds fail on the merits. Docket No. 14. Petitioner has filed a Traverse. Docket No. 16. The petition will be denied for the reasons set forth below.

---

　　　　*Kelly Harrington is substituted for A. Hedgpeth pursuant to Federal Rule of Civil Procedure 25(d).

1

# BACKGROUND

In an unpublished opinion filed on October 31, 2005, the California Court of Appeal, Third Appellate District, summarized the factual background of the offense and trial:

>     On March 3, 2004, at approximately 11 a.m., Sajid Zaman Khan was driving his pickup truck on Beaumont Street in Sacramento. As he approached a stop sign at the intersection of Beaumont Street and Eleanor Avenue, a man waved at him and cried, "Stop, stop, stop." While Khan was distracted by this man, another man (who was later identified as defendant) climbed through his driver's side window, half-way inside his truck, and grabbed his neck and his cell phone. Defendant then climbed out of the truck and told Khan, "Don't move or I'll kill you." When Khan saw defendant had a gun, he bent down. Defendant then fired a shot and ran away.
>
>     Khan continued down Beaumont Street and saw two police officers at the next stop sign. He told Sacramento Police Officer Timothy Chan that he had just been robbed at gunpoint and asked Officer Chan to follow him back to the scene of the crime. Officer Chan did so, and on the way, Khan pointed out defendant and the man who waved him down.
>
>     Officer Chan ordered both men to stop and to get on the ground. Defendant, who was wearing a green jacket, continued walking while the other man stopped. Officer Chan again ordered defendant to get on the ground and stop, but defendant ignored him. When Officer Chan continued after defendant, defendant took off running. Officer Chan followed until defendant jumped over a fence. Officer Chan then instructed dispatch to "set up a perimeter." [Footnote 2]
>
>> [Footnote 2: Officer Chan explained that for reasons of "officer safety, you never bail over a fence after someone that's potentially armed with a gun."]
>
>     Defendant was found hiding in the laundry room of a nearby apartment complex. Although he was no longer wearing a green jacket, a green jacket was recovered from inside one of the laundry room clothes dryers.
>
>     Officer Chan identified defendant as the person who had fled from him. Later that day and again at trial, Khan identified defendant as the person who robbed him.
>
>     At least three people witnessed the incident. Patrick Williams, a mower operator for the City of Sacramento Parks Department, saw the incident from the department's corporation yard at the intersection of Beaumont Street and Eleanor Avenue. Williams saw Khan's vehicle "jerking" forward and "a pair of legs hanging out of the driver's side window." He then saw the person hanging from the window jump back from the car and fire a shot at the driver of the car. He saw the gun in the person's hands and observed "gun smoke" after the gun was fired. He testified the shooter was African American but said he would not be able to recognize him if he saw him again.
>
>     Edward Saenz, a parks supervisor for the Parks Department, was also working at the corporation yard at the time of the incident. He, too, saw Khan's truck "jerking" and a "guy in the [driver's side] window of the truck." As he approached Khan's truck to see if he could help, he saw a man "jump out" of the truck and immediately heard a gunshot. He did not see a gun; he only heard the shot. He testified the person who jumped out of the truck was African American but said he would not be able to recognize him if he saw him again.
>
>     Janeth Cincineros Sanchez witnessed the incident from her cousin's second floor window. Sanchez testified she saw an individual hitting Khan through the window of his truck. She then "put [her] head back in the window, and then . . . heard

gunshots." When she looked out the window again, the man who had been hitting Khan was backing away from the truck. According to Sanchez, the man was wearing a green jacket. At trial, Sanchez identified defendant as the person she saw hitting Khan through the window.

Gunshot residue was found on the right cuff of the green jacket recovered from the laundry room.

The defense called one witness: private investigator Thomas Paul Heffernan. Heffernan testified that he met with Khan on two occasions. On the first occasion, Khan told Heffernan "he never saw the guy fire [the gun] and [did not] know where the gunfire came from." The second time Heffernan met with Khan, Khan told Heffernan "the two guys charged in this case were not the right guys." During the second meeting, Khan mentioned being "under pressure" at least four times.

*People v. Collins*, No. C048197, Slip op. at 2-5 (Cal. Ct. App. October 31, 2005) (available in the record as Lodged Document No. 4).

Petitioner timely appealed his conviction, arguing that the trial court erred when it instructed the jurors they could use evidence of third party threats against a witness to show Petitioner's state of mind. Lodged Document No. 1. The Court of Appeal affirmed Petitioner's convictions in a reasoned opinion filed October 31, 2005. *Collins*, No. C048197, Slip op. at 9. The Supreme Court of California denied review without comment on January 18, 2006. *People v. Collins*, No. S139530 (available in the record as Lodged Document No. 6). Petitioner thereafter filed a petition for writ of habeas corpus with the superior court, arguing that relief was warranted because (1) the arresting officers questioned Petitioner before giving him *Miranda* warnings; (2) the trial court erred by allowing the prosecutor to charge the personal discharge of a firearm enhancement based on a toy gun; (3) trial counsel rendered ineffective assistance when he failed to object to inadmissible evidence and failed to advance Petitioner's cause at trial; and (4) appellate counsel rendered ineffective assistance when he failed to raise these issues on direct review. Lodged Document No. 7. The Superior Court of California, Sacramento County, denied the petition in a reasoned opinion on September 27, 2006. Lodged Document No. 8. Petitioner then filed a petition for writ of habeas corpus with the Court of Appeal, raising the same grounds contained in his petition to the superior court, and adding a claim that the prosecutor committed misconduct by introducing the victim's perjured statement at trial. Lodged Document No. 9. The petition was denied without comment on January 25, 2007. *Id*. Petitioner raised the same arguments in a petition for writ of habeas corpus before the California Supreme Court. Lodged Document No. 10. The petition was denied without comment on July 18, 2007. Lodged Document No. 11.

## LEGAL STANDARD

A writ of habeas corpus is available under 28 U.S.C. § 2254 only on the basis of some transgression of federal law binding on the state courts. *See Peltier v. Wright*, 15 F.3d 860, 861 (9th Cir. 1993); *Middleton v. Cupp*, 768 F.2d 1083, 1085 (9th Cir. 1985) (citing *Engle v. Isaac*, 456 U.S. 107, 119 (1982)). A federal writ is not available for an alleged error in the interpretation or application of state law. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Park v. California*, 202 F.3d 1146, 1149-50 (9th Cir. 2000); *Middleton*, 768 F.2d at 1085. Habeas corpus cannot be utilized to try state issues *de novo*. *Milton v. Wainwright*, 407 U.S. 371, 377 (1972).

Because the instant petition was filed after April 24, 1996, any claim therein that was adjudicated by a state court on the merits is governed by the deferential standard of review set forth in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254. *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997); *Clark v. Murphy*, 331 F.3d 1062, 1067 (9th Cir. 2003). Where a state court has adjudicated the merits of a petitioner's claim, this Court, under AEDPA, may not grant relief unless the state court decision "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). A state court decision is contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Court] has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). A state court decision involves an unreasonable application of Supreme Court case law if it "identifies the correct governing legal principle from [the Court's] decisions but unreasonably applies that principle to the particular facts of [a] prisoner's case." *Id*. To qualify as "unreasonable," it must be objectively unreasonable, a substantially higher threshold than merely incorrect. *Schriro v. Landrigan*, 550 U.S. 465, 127 S. Ct. 1933, 1939 (2007).

Clearly established federal law refers only to the holdings of the Supreme Court's decisions in effect at the time of the relevant state-court decision. *Carey v. Musladin*, 549 U.S. 70, 74 (2006). In the absence of an applicable holding of the Supreme Court, it cannot be said that a state court decision is contrary to or an unreasonable application of clearly established federal law. *See id*. at

77. Finally, even if the AEDPA standard is satisfied, the Court cannot grant relief unless the error had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 638 (1993); *Fry v. Pliler*, 127 S. Ct. 2321, 2326-27 (2007) (*Brecht* standard continues to apply after enactment of AEDPA).

In applying this standard, a federal district court looks to the last reasoned state court decision as the basis for the state court judgment. *Robinson v. Ignacio*, 360 F.3d 1044, 1055 (9th Cir. 2004). The Court presumes that the state court's findings of fact are correct, unless the petitioner rebuts the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). Where a state court has "silently denied" a claim on the merits without explaining its *ratio decidendi*, a district court independently reviews the record to determine if the denial was an unreasonable application of clearly established federal law. *Delgado v. Lewis*, 223 F.3d 976, 982 (9th Cir. 2000); *Reynoso v. Giurbino*, 462 F.3d 1099, 1109 (9th Cir. 2006).

**DISCUSSION**

I. Jury Instruction Regarding Third-Party Threats

Petitioner alleges that he was denied a fair trial by the trial court's instruction that the jurors could consider third-party threats against a witness as to Petitioner's state of mind. Respondent contends this claim must be denied because the Court of Appeal's conclusion that the error was harmless was not an unreasonable application of clearly established federal law.

"It is not the province of a federal habeas court to reexamine state-court determinations of state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). It is also "well-established proposition that a single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge." *Cupp v. Naughten*, 414 U.S. 141, 146-47 (1973). To support a collateral attack on the judgment, the question is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process," not merely whether "the instruction is undesirable, erroneous, or even 'universally condemned.'" *Id*.

The Court of Appeal addressed this issue on direct review:

> Defendant's sole contention on appeal is that "the trial court erred when it instructed the jurors they could use evidence of third party threats against a witness to show defendant's state of mind."
>
> At trial, Khan testified three people had asked him not to testify in this case. Defendant's wife asked Khan not to "go to Court" because she and defendant "have five children, and [defendant] will be sentenced." Defense counsel objected to the admission of this statement on hearsay grounds. The trial court overruled the objection and gave the following limiting instruction: "This statement is offered not for the truth of the matter but because it explains the defendant's state of mind."
>
> One month before the trial, defendant's brother told him, "Don't go to Court and if a judge asked [sic] you to raise your hand, you don't raise your hand and tell them that he's not the man." Defendant's brother also told Khan that if Khan went to court, he would "kick [his] ass [and] break all the windows [in his truck]." Defense counsel objected to the admission of these statements on hearsay grounds. The trial court overruled the objection and gave the following limiting instruction: "This once again . . . is being presented to indicate the defendant's or the witness' state of mind and not the truth of the matter stated."
>
> Approximately one month before the trial, defendant's wife and mother told Khan: "Don't go to court. We'll give you a room, and we'll take care of you." Khan was homeless at the time. Defendant did not object to the admission of this statement, and the trial court did not give a limiting instruction.
>
> On appeal, defendant does not contend the statements attributed to his wife, brother and mother were inadmissible. To the contrary, he concedes they were admissible as evidence of Khan's credibility. (*People v. Stewart* (2004) 33 Cal.4th 425, 493 [evidence a witness is afraid to testify is relevant to the witness' credibility and is admissible even if the witness' fear is not linked directly to the defendant].) Rather, defendant contends the trial court erred in instructing the jury that the statements could be used to "explain the defendant's state of mind," since there was insufficient evidence linking defendant to the statements. [Footnote 3]
>
>> [Footnote 3: To the extent the People suggest defendant waived this claim because he either failed to object entirely or failed to raise the specific objection presented on appeal in the trial court, we reject the contention. Because defendant "asserts instructional error affected his substantial rights, he is not precluded from raising the claim on appeal even absent an objection in the trial court." (*People v. Benavides* (2005) 35 Cal.4th 69, 111, citing § 1259, *People v. Prieto* (2003) 30 Cal.4th 226, 247.)]
>
> Evidence that a third person attempted to influence a potential witness outside the presence of the defendant is not admissible to explain the defendant's state of mind unless "it [] appears that the third person is acting on behalf of the defendant in so doing, or is authorized by him to do so. The authority of the third person may be shown by circumstantial evidence. [Citation.] . . . [However,] mere relationship, of itself, has never been held sufficient . . . ." (*People v. Perez* (1959) 169 Cal. App. 2d 473, 477-478; *see also People v. Bell* (2004) 118 Cal.App.4th 249, 256.)
>
> Here, the only evidence tending to connect defendant with the attempts by third persons to suppress or fabricate testimony was his relationship to the third persons. Accordingly, the trial court erred in instructing the jury that it could consider the efforts of defendant's wife, brother and mother to dissuade Khan from testifying or to provide false testimony as evidence of defendant's state of mind. [Footnote 4]

6

> [Footnote 4: As the People note, the trial court did not specifically instruct the jury that defendant's wife's and mother's joint statement to Khan was admissible to explain defendant's state of mind. As we explain below, even assuming the jury understood the court's prior instructions as applying to the joint statement of defendant's wife and mother, any error was harmless.]
>
> Nevertheless, reversal is required only if it is reasonably probable the result would have been more favorable to defendant absent the error. (*People v. Watson* (1956) 46 Cal.2d 818, 836.) The evidence against defendant was overwhelming. Khan identified defendant at the scene and at trial as the man who robbed him. Khan also testified defendant threatened him with a gun and fired it once he was outside Khan's truck. Khan's testimony was corroborated by Williams who saw the person who had been hanging from Khan's truck fire at Khan. Sanchez's testimony provided further corroboration, and she identified defendant as the man who accosted Khan. Defendant manifested a consciousness of guilt by fleeing from Officer Chan and changing his appearance by removing his jacket and hiding it in a clothes dryer. In addition, gunshot residue was found on the right cuff of the jacket recovered from the clothes dryer.
>
> Measured against this and other prosecution evidence, the defense case -- which boiled down to an argument that there was "reasonable doubt as to whether [defendant] was the robber or discharged the gun" -- was simply not credible. Accordingly, we conclude it is not reasonably probable that defendant would have obtained a more favorable outcome if the jury had been properly instructed concerning the use of the statements. (*People v. Watson*, *supra*, 46 Cal.2d at p. 836.) [Footnote 5]
>
> > [Footnote 5: To the extent defendant contends the trial court further erred in not instructing the jury with CALJIC No. 2.05 ("Efforts Other Than by Defendant to Fabricate Evidence"), he has not cited and we are not aware of any case which specifically holds that a trial court has a sua sponte duty to instruct the jury with CALJIC No. 2.05. Insofar as CALJIC No. 2.05 appears to be a limiting instruction, not an instruction setting forth a general principle of law, the trial court had no sua sponte duty to give it. (*See People v. Lewis* (2001) 26 Cal.4th 334, 361-362 [court not required to instruct sua sponte on issue serving to limit a witness's testimony].) Further, even assuming for the sake of argument that the trial court has a sua sponte duty to give CALJIC No. 2.05 when the evidence in the case supports that instruction, as we explained, any error was harmless.]

*Collins*, No. C048197, Slip op. at 5-8.

The Court agrees that the two erroneous instructions were harmless in light of the overwhelming evidence against Petitioner. *See Brecht*, 507 U.S. at 638. Accordingly, the Court cannot find that the Court of Appeal's decision was an unreasonable application of clearly established federal law.

## II. Alleged *Miranda* Violation

Petitioner alleges that his rights under the Fifth, Sixth, and Fourteenth Amendments were violated when the arresting officers failed to give full *Miranda* warnings before asking Petitioner

7

about the gun, and failed to cease questioning him after he invoked his right to counsel. Respondent argues that the superior court's denial of this claim was not an unreasonable application of clearly established federal law.

Claims of incorrectly admitted custodial statements are analyzed under *Miranda v. Arizona*, 384 U.S. 436 (1966). The requirements of *Miranda* are "clearly established" federal law for purposes of federal habeas corpus review under 28 U.S.C. § 2254(d). *Juan H. v. Allen*, 408 F.3d 1262, 1271 (9th Cir. 2005). Habeas relief should be granted if the admission of statements in violation of *Miranda* "had a substantial and injurious effect or influence in determining the jury's verdict." *See Brecht*, 507 U.S. at 638.

The Superior Court of California, Sacramento County, the last court to address this claim in a reasoned opinion, found it meritless based on the public safety exception. Lodged Document No. 3 (citing *People v. Sims*, 5 Cal.4th 405, 449-451 (Cal. 1993)).

The public safety exception to *Miranda* allows police officers to "ask questions reasonably prompted by a concern for the public safety." *New York v. Quarles*, 467 U.S. 649, 655-56 (1984). In order for the public safety exception to apply, there must have been "an objectively reasonable need to protect the police or the public from any immediate danger associated with [a] weapon." *United States v. Martinez*, 406 F.3d 1160, 1165 (2005). Khan told Officer Chan that Petitioner had robbed him "at gunpoint." When officers discovered Petitioner a short time after the incident they had an objectively reasonable need to learn the location of the firearm in order to protect themselves and the public from immediate danger associated with Petitioner's firearm. The superior court's decision was not an unreasonable application of clearly established law. Further, the Court notes that Petitioner has not even alleged that the officers' questions resulted in either a statement later admitted against him or fruit of the poisonous tree. Thus there are no facts alleged that could demonstrate any prejudice whatsoever from the alleged *Miranda* violation.

III. Misjoinder

Petitioner's argument is somewhat convoluted; however, it appears he is essentially alleging that the trial court erred by allowing him to be charged with the gun-use enhancement when the only evidence for the enhancement was a toy gun recovered by police near the apartment complex where Petitioner was arrested. Respondent argues that the superior court's denial of this claim was not an unreasonable application of clearly established federal law.

The Superior Court of California, Sacramento County, the last state court to render a reasoned decision on this ground, found that Petitioner's claim was factually inaccurate:

> Accordingly to petitioner's own statements, the victim said that petitioner had been armed and had fired a weapon. In addition to that, a forensic expert found the presence of gunpowder residue on the jacket that petitioner had been seen wearing at the time of the robbery and during the foot pursuit. Finally, three witnesses to the robbery all heard the gunfire and one of them saw petitioner holding the weapon. Clearly, petitioner's claim that the "sole" evidence was a toy gun found near the scene of his arrest is inaccurate.

Lodged Document No. 8 at 3.

The evidence identified by the superior court was clearly enough to satisfy the low probable cause standard that applies to holding orders. *See* Cal. Penal Code § 872. The overwhelming evidence was also sufficient to support the jury's verdict on the enhancement. *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (the constitutional standard for sufficiency of the evidence is whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt"). Petitioner has failed to rebut the state court's factual findings by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1); *Miller-El*, 537 U.S. at 340. This Court cannot say that the superior court's decision was an unreasonable application of clearly established federal law.

IV.  Ineffective Assistance of Trial Counsel

Petitioner alleges that his trial counsel rendered ineffective assistance by (1) failing to challenge the charging of the gun-use enhancement; (2) failing to challenge the state forensic expert's testimony regarding gun-shot-residue; and (3) failing to call Jonathan Cooper, the man who distracted Khan by flagging him down. Respondent submits that the superior court's determination that Petitioner received effective assistance of counsel was not an unreasonable application of clearly established federal law.

To demonstrate ineffective assistance of counsel, Petitioner must show both that his counsel's performance was deficient and that the deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). A deficient performance is one in which counsel made errors so serious that counsel was not functioning as the counsel guaranteed by the Sixth Amendment. *Id*. Petitioner must show that defense counsel's representation was not within the range of competence demanded of attorneys in criminal cases and that there is a reasonable

9

probability that, but for counsel's ineffectiveness, the result would have been different. *Hill v. Lockhart*, 474 U.S. 52, 57 (1985).

   *1. Failure to Challenge the Gun-Use Enhancement*

As concluded by the superior court and discussed *supra*, while the state never recovered a firearm in this case, there was overwhelming evidence that Petitioner fired a gun during the robbery. Counsel's alleged failure to challenge the charge was clearly not deficient. The superior court's decision on this point was not an unreasonable application of *Strickland*.

   *2. Failure to Challenge the State's Forensic Evidence*

The superior court denied this claim as meritless:

> Petitioner's claim that his counsel's performance was deficient when the latter allegedly failed to challenge the evidence presented by the forensics expert is discredited by petitioner's own statement that defense counsel questioned the witness about the other possible sources of the chemicals found on petitioner's clothing. That defense counsel did not call his own forensic expert does not establish ineffective assistance of counsel in the absence of any documentary evidence from petitioner indicating that another expert could have provided testimony that may have helped petitioner's defense. In any case, as the underlying file reflects that the evidence showing that he fired a weapon during the robbery was overwhelming, defense counsel undoubtedly saw the futility of calling upon his own forensics expert in an attempt to challenge the state's evidence was to the nature of the substance found on the jacket. Based on this information, petitioner cannot demonstrate that his attorney's decision not to call a separate forensic expert constituted deficient performance.

Lodged Document No. 8 at 3-4.

As noted by the superior court, Petitioner has admitted that counsel successfully cross-examined the state's forensic evidence, eliciting testimony that the particles on the green jacket could have come from sources other than a gun-shot. Petitioner has also failed to state any facts that would indicate a forensic expert hired by the defense would have reached conclusions different from those of the state's expert. This Court cannot say that the superior court's decision was an unreasonable application of clearly established federal law.

   *3. Failure to Call Jonathan Cooper*

Petitioner claims that Cooper's testimony would have exonerated Petitioner from the firearm enhancement. The superior court found that Petitioner had failed to state a prima facie case because he failed to state "facts which might satisfy either prong of an ineffective assistance of counsel claim." Lodged Document No. 8 at 4.

10

Petitioner has attached an unsigned document styled as an "affidavit" purporting to be from Cooper. The document states:

> The victim came through trying to sale [sic] his cell phone. Collins went to his car window to see what he wanted for the phone. The next thing I know the truck was rollin [sic] down the street with Collins in the window. The truck backfired. Collins fell out the window and got up from the ground and ran. He never had a weapon or discharged a firearm. I don't know why he ran away because he did nothing wrong.

Docket No. 1 at 72. The unsigned document is clearly not a valid affidavit. Even if it were, Petitioner has failed to show that Cooper was available to testify and that his counsel failed to call him for other than tactical reasons. Given that Cooper was also charged with the robbery of Khan, it is unlikely he was available or would have been credible. Given the preposterousness of the statement in light of the gun-shot residue and the testimony of four witnesses who heard and two witnesses who saw the shot, it was not deficient performance to not call Cooper. The superior court's decision was not an unreasonable application of clearly established federal law.

V. Prosecutorial Misconduct

Petitioner argues that the prosecutor committed misconduct by eliciting the perjured testimony of the victim, Sajid Khan. In support of this claim, Petitioner has submitted a signed affidavit, purportedly from Khan, in which Khan partially recants his trial testimony. Docket No. 1 at 99. In the new affidavit, Khan still states that Petitioner robbed him of his cell phone, but he now asserts that there was no gun or gun shot. *Id*. Respondent submits that the affidavit is unsigned, the claim is unexhausted, and the argument meritless in light of the overwhelming evidence that Petitioner fired a gun during the robbery. Respondent is mistaken with regard to whether the affidavit is signed and exhausted. Petitioner raised this argument and presented the signed affidavit to both the California Court of Appeal and the California Supreme Court. *See* Lodge Document No. 10 at 7, 23-24, Ex. G. As both state courts silently denied the claim, this Court reviews the record *de novo* to determine if the denial was an unreasonable application of clearly established federal law. *See Delgado*, 223 F.3d 976, 982 (9th Cir. 2000).

Prosecutors have a special duty as the representative of the State: "He may prosecute with earnestness and vigor -- indeed, he should do so. But, while he may strike hard blows, he is not at liberty to strike foul ones." *Berger v. United States*, 295 U.S. 78, 88 (1935). A writ of habeas corpus will not issue for prosecutorial misconduct unless the conduct "so infected the trial with

11

unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637 (1974)).

"[I]t is established that a conviction obtained through use of false evidence, known to be such by representatives of the State, must fall under the Fourteenth Amendment." *Napue v. Illinois*, 360 U.S. 264, 269 (1959). "The same result obtains when the State, although not soliciting false evidence, allows it to go uncorrected when it appears." *Id*. However, the false testimony must still qualify as "material" under *Brady v. Maryland*, 373 U.S. 83, 87 (1963). *See Giglio v. United States*, 405 U.S. 150, 154 (1972)). An error does not require a new trial unless "'the false testimony could . . . in any reasonable likelihood have affected the judgment of the jury.'" *Giglio*, 405 U.S. at 154 (quoting *Napue*, 360 U.S. at 271). Such a reasonable likelihood exists when the probability that the result would have been different is "sufficient to undermine confidence in the outcome." *Pennsylvania v. Ritchie*, 480 U.S. 39, 57 (1987) (citation and internal quotation marks omitted).

The affidavit produced by Petitioner was allegedly sworn by Khan on January 9, 2007, and states the following:

> The following statement is made of my own free will under no duress. I make this statement because of a need to clear my conscience and to address statements made at trial.
>
> At trial, I testified that Mr. Collins had used a gun to rob me of my cellphone on March 3rd, 2004. However, this was not completely true. The day of the robbery, I was approached by Mr. Collins and Mr. Cooper at my truck, but there was no gun used to take my cellphone. There was a physical struggle for the cellphone inside of the truck. After taking my cellphone, Mr. Collins and Mr. Cooper ran from the scene, but no shots were fired, nor did I see a gun.
>
> Out of anger, I told the police I was robbed at gunpoint for my cellphone. After filing charges with the police, I attempted to tell the truth about the robbery as it happened, but the District Attorney's office wanted the charges to be robbery with a weapon to make the charge more serious. So to assist them in prosecuting the case against Collins, I agreed to state that a gun was used in the robbery. I was homeless and in desperate need of money and shelter, so the District Attorney assisted me by giving me some money to get a room and to help support my crack cocaine habit. I had a drug habit at the time and was going through strong cocaine withdrawals. The district Attorney said they would continue to give me money for my habit, if I cleaned myself up and testify at trial. I felt that I had to lie at trial and on my statements in order keep receiving the help from the District Attorney.
>
> I have been a drug user for many years and needed help with dealing with my drug addiction. Since the trial, I have sought out help for my drug addiction, and have been sober for several months. I have also asked Mr. Collin's family for forgiveness for the trouble I have caused. I cannot continue in good conscience with knowing that I assisted the court in convicting a man to 31 years of prison for a crime he did not commit. So I make this signed statement to give an honest testimony to the court regarding the events around that robbery. I can only hope that the court will forgive me for my actions and have mercy on me.

> Under the penalty of perjury I declare that the above testimony is true and correct to the best of my memory.

Docket No. 1 at 99. The affidavit is signed, dated, and notarized. *Id*. The Court will presume the authenticity of the affidavit in evaluating Petitioner's claim.

First, even if the Court presumes the veracity of Khan's affidavit, Petitioner has failed to establish that the prosecutor knowingly used or failed to correct perjury. The affidavit establishes only that Khan gave conflicting statements to the police regarding Petitioner's use of a firearm during the robbery. A prosecutor does not knowingly use perjured testimony just because a witness has made prior inconsistent statements. *See, e.g., United States v. Wolf*, 813 F.2d 970, 976-77 (9th Cir.1987) (discrepancies in witness testimony did not establish that the state knowingly used false trial testimony).

Second, even if the prosecutor committed error, the probability that the result would have been different absent the allegedly perjured testimony is extremely remote. *See Ritchie*, 480 U.S. 39, 57 (1987). Had Khan testified at trial consistent with the new affidavit, the result would have been the same. Within minutes of the robbery, Khan told Officer Chan that he had just been robbed *at gunpoint*. Between the time of the robbery and the trial, Petitioner's family members made three attempts to influence Khan's testimony, appealing to his compassion, offering him a room, and threatening him with bodily injury. Further, the evidence that Petitioner discharged a firearm during the robbery was overwhelming. Three witnesses saw the robbery and heard the gunshot. One of them testified that he watched Petitioner "fire a shot at the driver of the car," and actually "saw the gun in the person's hands and observed 'gun smoke' after the gun was fired." Forensic testing revealed gunshot residue on the sleeve of Petitioner's green jacket. Given the extremely short amount of time between the robbery and Khan's initial statement to Officer Chan, the third-party efforts to influence Khan's testimony in favor of Petitioner, and the overwhelming evidence supporting Khan's initial statement, there is little if any doubt that the jury would have found the gun-use enhancement true even if Khan had recanted on the stand.

Alternatively, the Court finds that Khan's new affidavit is inherently incredible. A petitioner is normally entitled to a evidentiary hearing if "he has not previously received a full and fair opportunity to develop the facts of his claim and he presents a 'colorable claim' for relief." *Earp v. Ornoski*, 431, F.3d 1158, 1169 (9th Cir. 2005). However, "[i]n rare instances, credibility may be determined without an evidentiary hearing where it is possible to 'conclusively' decide the

13

credibility question based on 'documentary testimony and evidence in the record.'" *Id*. at 1170 (quoting *Watts v. United States*, 841 F.2d 275, 277 (9th Cir. 1988)). This case presents one of those rare instances where the record resolves the credibility issue. The extremely short amount of time between the robbery and Khan's initial statement to Officer Chan, the third-party efforts to influence Khan's testimony in favor of Petitioner, and the overwhelming evidence, both testimonial and forensic, conclusively demonstrates that Khan's new affidavit is patently false.

Accordingly, this Court cannot find that the California Supreme Court's silent denial of this claim was an unreasonable application of clearly established federal law or an unreasonable determination of the facts in light of the evidence presented.

## CONCLUSION

Petitioner's application must be denied as his claims are without merit. Further, as no reasonable jurist could debate whether the petition should have been resolved in a different manner, the Court declines to issue a Certificate of Appealability.[2] Any further request for a Certificate of Appealability must be addressed to the Court of Appeals. *See* Fed. R. App. P. 22(b); Ninth Circuit R. 22-1.

Accordingly, **IT IS HEREBY ORDERED** that:

1. Petitioner's application for writ of habeas corpus is DENIED;

2. The Court declines to issue a Certificate of Appealability; and

3. The Clerk shall enter judgment accordingly.

Dated this the 25th day of March 2009.

/s/ James K. Singleton, Jr.
**JAMES K. SINGLETON, JR.**
United States District Judge

---

[2]A district court may grant a certificate of appealability only if a petitioner makes a substantial showing of the denial of a constitutional right. *See* 28 U.S.C. § 2253(c)(2). "To obtain a COA under § 2253(c), a habeas prisoner must make a substantial showing of the denial of a constitutional right, a demonstration that . . . includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 482 (2000) (internal quotation marks and citations omitted).